1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROTINGENT INC., | CASE NO. C20-1551-KKE |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| LISA GUSTAFSON-FEIS, | |
| Defendant. | |
| LISA GUSTAFSON-FEIS, | |
| Third-Party Plaintiff, | |
| v. | |
| RAWLINGS COMPANY LLC, et al.; | |
| Third-Party Defendants. | |
| LISA GUSTAFSON-FEIS, | |
| Counterclaimant, | |
| v. | |
| PROTINGENT INC., et al.; | |
| Counter-Defendants. | |

This matter comes before the Court on Plaintiff/Counter-Defendant Protingent Inc.'s motion for summary judgment. Dkt. No. 69. For the reasons explained below, based on a review of the briefing and the remainder of the record, the Court grants the motion.[1]

## I.       BACKGROUND

Defendant Lisa Gustafson-Feis was an employee of Protingent Inc. ("Protingent") in June 2016, when she was injured in a motor vehicle accident. Dkt. No. 1 ¶¶ 2, 7. At that time, Gustafson-Feis was covered by Protingent's Health and Welfare Plan ("the Plan"), a self-funded ERISA plan. Dkt. No. 71 ¶ 2. As a self-funded plan, the health benefits for the Plan are paid by Protingent, and the Plan is not insured. *See id*. Counter-Defendant Aetna Life Insurance Company ("Aetna") administered the Plan on behalf of Protingent. *See* Dkt. No. 24 ¶ 3(b).

Gustafson-Feis filed an action in New York to recover for the injuries she sustained in the accident. *See* Dkt. No. 9-20. Protingent subsequently engaged Third-Party Defendant Rawlings Company Inc. ("Rawlings") as a subrogation agent to recover the amounts that it had paid out for Gustafson-Feis's accident-related medical expenses. *See* Dkt. No. 9 ¶ 3(a). The "Subrogation and Right of Recovery" provision of the Plan required Gustafson-Feis to reimburse the Plan for all benefits received from any recovery or settlement reached with a third-party relating to her injuries:

> If you receive any payment as a result of an injury, illness or condition, you agree to reimburse the plan first from such payment for all amounts the plan has paid and will pay as a result of that injury, illness or condition, up to and including the full amount of your recovery.
>
> …
>
> Further, the plan will automatically have a lien to the extent of benefits paid by the plan for the treatment of the illness, injury or condition upon any recovery whether by settlement, judgment, or otherwise, related to treatment for any illness, injury or condition for which the plan paid benefits. The lien may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by

---

[1] Although Plaintiff requested oral argument on its motion, the Court finds the motion suitable for resolution based on the parties' briefing.

1

2

the plan including, but not limited to, you, your representative or agent, and/or any other source possessing funds representing the amount of benefits paid by the plan.

3

4

5

Dkt. No. 70-1 at 76–77.  The Plan specifies that it has a first-priority claim to reimbursement, such that the Plan "is entitled to full reimbursement on a first-dollar basis from any payments, even if such payment to the plan will result in a recovery which is insufficient to make you whole or to compensate you in part or in whole for the damages sustained." *Id.* at 77.

6

7

8

9

10

11

Rawlings sent a letter in August 2016 to Geico (an insurer involved in the New York action) informing it that the Plan had a medical lien (totaling $7,242.38 at that time) on the proceeds of Gustafson-Feis's action, such that Geico should not settle the claim without Rawlings' approval. *See* Dkt. No. 70-3.  Rawlings also cautioned Geico that the lien amount referenced in that letter should not be used for settlement purposes, and that Geico should not settle with Gustafson-Feis without contacting Rawlings to determine the final amount.  *Id*.

12

13

14

15

16

17

18

Gustafson-Feis eventually settled the New York action for $150,000 in 2020.  *See* Dkt. No. 9-18, Dkt. No. 9-59.  Gustafson-Feis's counsel in that action, Michael White, subsequently emailed Rawlings, requesting a final amount for the medical lien.  Dkt. No. 70-4.  Rawlings responded in May 2020 to indicate that the lien now totaled $73,326.54, and detailed the payments made from June 2016 through January 2017 in a 49-page spreadsheet.  Dkt. No. 70-5.  Upon receipt of that updated total, Gustafson-Feis accused Rawlings of fraud, contending that the amount of the medical lien was limited to the amount mentioned in the August 2016 letter.  *See* Dkt. No. 70-6.

19

20

21

22

White agreed to satisfy the total lien amount demanded out of the settlement funds, but Gustafson-Feis was unaware of that agreement[2] and refused to authorize him to remit the funds to the Plan, and instead filed complaints against Rawlings and/or Rawlings' counsel with the

23

24

---

[2] *See* Dkt. No. 74 ¶ 95.

ORDER GRANTING SUMMARY JUDGMENT - 3

1
2
3

Kentucky Bar Association, Washington's Office of the Insurance Commissioner, the Better Business Bureau, the Federal Trade Commission, and the Washington Attorney General's Office.[3] *See* Dkt. Nos. 9-48, 9-50, 9-51, 9-52, 9-53; Dkt. No. 70 ¶ 9.

4
5
6
7
8
9
10
11
12

Protingent filed this action in October 2020 to recover the funds owed to the Plan held in trust by White's firm. Dkt. No. 1. Although Gustafson-Feis discharged White's firm as her attorneys, the firm is holding $73,326.54 in trust to satisfy the Plan's medical lien, pending this Court's determination. *See* Dkt. No. 70-8. Gustafson-Feis[4] filed an Answer/Counterclaim/Third-Party Complaint in December 2020 alleging that Rawlings' efforts to recover the funds are fraudulent, violate the Washington Consumer Protection Act ("CPA") and the Fair Debt Collection Practices Act ("FDCPA"), and constitute harassment and retaliation. Dkt. No. 9 ¶ 145. Gustafson-Feis also alleged that Protingent/Rawlings failed to provide Plan documents promptly and should be fined under 29 U.S.C. § 1132(c). *Id.* ¶ 142.

13
14
15

Protingent now requests summary judgment on its claims, summary judgment dismissal of the counterclaims, and an award in the amount of the medical lien ($73,326.54) plus interest and attorney fees. This motion is ripe for resolution.[5] Dkt. No. 69.

16

## II.     ANALYSIS

17

### A.    Summary Judgment Standard

18
19
20

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21

_____

[3] None of these complaints resulted in a finding of fault on the part of Rawlings. *See* Dkt. No. 70 ¶ 9.

22
23

[4] Gustafson-Feis was represented by an attorney in this action from August 2021 to July 2022, but has been proceeding *pro se* at all other times in this litigation. *See* Dkt. Nos. 33 & 52.

24

[5] Protingent's motion was ripe on December 1, 2023, and Gustafson-Feis filed a surreply on December 27, 2023, that does not comply with Local Civil Rule 7(g) and is thus not considered in resolving this motion. *See* Dkt. No. 79.

ORDER GRANTING SUMMARY JUDGMENT - 4

Civ. P. 56(a).  The Court does not make credibility determinations or weigh the evidence at this stage.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.  And to the extent the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party has carried its burden under Rule 56, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).  Metaphysical doubt is insufficient (*id.* at 586), as are conclusory, non-specific allegations (*Lujan*, 497 U.S. at 888–89).

**B.    There Are No Disputed Issues of Material Fact as to Gustafson-Feis's Obligation To Reimburse the Plan for the Payments Made on Her Behalf.**

The fiduciary of an ERISA-governed health plan may bring an action to "enforce any provisions of … the terms of the Plan."  *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 361 (2006).  Protingent contends that it is entitled to judgment as a matter of law to enforce the Plan provision indicating that Protingent has a first-priority claim for reimbursement of the payments it made for Gustafson-Feis's medical care after her accident.  Dkt. No. 69.  As detailed *supra*, Rawlings prepared an itemized statement identifying the payments made under the Plan, and Gustafson-Feis has not disputed any of those specific line items.

1

2     Although there does not appear to be a dispute as to any material fact, Gustafson-Feis

3   contends that it would be unlawful to permit Protingent to enforce the reimbursement obligation

4   under the Plan.  Dkt. No. 74.  The Court will address each of Gustafson-Feis's legal arguments

    against reimbursement in turn.

5          1.      *The Make-Whole Doctrine Does Not Apply Because the Plan Disclaims It.*

6          First, Gustafson-Feis argues that it would be unfair to allow Protingent to be made whole

7   via reimbursement, while she was not made whole in her settlement of the New York action.  "It

8   is a general equitable principle of insurance law that, absent an agreement to the contrary, an

9   insurance company may not enforce a right to subrogation until the insured has been fully

10  compensated for her injuries, that is, has been made whole."  *Barnes v. Indep. Auto. Dealers*, 64

11  F.3d 1389, 1394 (9th Cir. 1995).

12         But in this case, there *is* an agreement to the contrary: the Plan explicitly provides that

13  Protingent's right to reimbursement takes priority over a beneficiary's right to be made whole.  *See*

14  Dkt. No. 70-1 at 77.  The right to be made whole applies "only when the parties are silent.  It is a

15  gap filler."  *Barnes*, 64 F.3d at 1394 (cleaned up).  Because an employee may "sign away his make-

16  whole right" (*id.* (cleaned up)) and Gustafson-Feis did so here by accepting benefits under the

17  Plan, she has no right to be made whole.  *See, e.g.*, *Admin. Comm. v. Salazar*, 525 F. Supp. 2d

18  1103, 1112 (D. Ariz. 2007) (holding that if a beneficiary accepts benefits under an ERISA plan

19  that gives a plan first-priority rights to a beneficiary's settlement proceeds, the made-whole

20  doctrine is disclaimed and the plan may demand reimbursement, even if sufficient funds do not

21  remain to make the beneficiary whole); *Swire Pac. Holdings, Inc. v. Jones*, No. C19-1329RSM,

22  2020 WL 4674231, at *3 (W.D. Wash. Aug. 12, 2020) (indicating that the "made-whole" doctrine

23  does not apply when a plan explicitly disclaims it).

24

ORDER GRANTING SUMMARY JUDGMENT - 6

1

2        2.       *Gustafson-Feis Has Not Identified Any Procedural Irregularities that*
              *Bar Enforcement of the Reimbursement Provision.*

3    Second, to the extent that Gustafson-Feis suggests that procedural irregularities in

4    Protingent's enforcement or notice of its lien undermine its right to reimbursement, she has

5    identified no irregularity. Gustafson-Feis contends that she is still waiting on information that may

6    clarify whether certain payments listed in the itemized statement fail to account for plan discounts,

7    bills written off, or bills ultimately paid by others. *See* Dkt. No. 74 at 6. As emphasized by

8    Protingent (Dkt. No. 77 at 4), however, the itemized statement delineates between amounts paid

9    by other insurers and amounts paid by the Plan (Dkt. No. 70-5), and the fact that providers may

10   have written off other amounts or that other insurers paid other amounts does not suggest that the

11   itemized statement of Plan payments is inaccurate. To the extent Gustafson-Feis believes plan

12   discounts could apply, she has not identified the "one substantial amount" that she believes is

13   implicated. *See* Dkt. No. 74 ¶ 33. As explained *infra*, Gustafson-Feis has had ample time to seek

14   information related to *inter alia* plan discounts and has not put forward any evidence indicating

15   that Protingent is not entitled to full reimbursement.

16   Because Gustafson-Feis has not established that any of the $73,326.54 demanded by the

17   Plan was not paid on her behalf, she has not met her burden on summary judgment to show that

18   there is a genuine issue of material fact related to the reimbursement amount.

19       3.       *Gustafson-Feis Has Not Shown that Any Claim of her Husband to the Settlement*
              *Proceeds is Material to the Plan's Right to Reimbursement.*

20   Third, Gustafson-Feis contends that her husband has a right to half of the settlement

21   proceeds and therefore half of those proceeds are unavailable to the Plan. *See* Dkt. No. 74 ¶¶ 36–

22   39. Even assuming this is true, Gustafson-Feis's half of $150,000 is enough to cover the

23

24

ORDER GRANTING SUMMARY JUDGMENT - 7

1   $73,326.54 held in trust to satisfy the medical lien.[6]  Thus, any dispute over Gustafson-Feis's

2   husband's entitlement to settlement proceeds does not impact the Plan's ability to recover.

3       *4.  The Miscellaneous Arguments Also Fail.*

4      Gustafson-Feis's other arguments also fail to establish that Protingent is not entitled to the

5   relief it seeks.  First, that Gustafson-Feis was provided with a booklet summarizing the terms of

6   the Plan does not suggest that Protingent cannot enforce the terms of the full Plan.  *See* Dkt. No.

7   74 at 5.  As noted by Protingent (Dkt. No. 77 at 3–4), the Plan was required by regulation to provide

8   an abbreviated summary of the Plan terms (45 C.F.R. § 147.200(a)(3)(i)), but no authority suggests

9   that the Plan cannot enforce portions not summarized therein.

10     Second, that the lien increased between the time of the August 2016 letter to Geico and the

11  May 2020 update from Rawlings does not suggest any impropriety: instead, it reflects the new

12  payments made on Gustafson-Feis's behalf after the August 2016 letter was written, a

13  circumstance anticipated in the letter itself.  *See* Dkt. No. 70-3.  Gustafson-Feis cites no authority

14  requiring Rawlings to provide interim updates as to the amount of its lien before the settlement

15  was reached.  Again, the letter itself cautioned against relying on the lien amount at that time and

16  instructed Geico to request an update before engaging in a future settlement negotiation.  *See id*.

17     Lastly, Gustafson-Feis has cited no authority indicating that Protingent was not diligent in

18  pursuing its lien or that it was required to take any other steps to pursue its lien.  The Plan indicates

19  that Protingent's lien rights attach automatically and that Gustafson-Feis was obligated to

20  reimburse the Plan without any notice.  *See* Dkt. No. 70-1 at 77.  To the extent that some

21  communications between Rawlings and Gustafson-Feis were delayed or incomplete due to

22

---

23    [6] Gustafson-Feis notes that the total amount sought by Protingent is more than the amount held in trust
because Protingent seeks attorney fees.  Dkt. No. 74 ¶ 39.  But she has not shown that this argument is material to
whether the Plan's right to reimbursement can be enforced, because Gustafson-Feis need not pay attorney fees out of
the settlement proceeds under the Plan.  *See* Dkt. No. 70-1 at 78.

24

ORDER GRANTING SUMMARY JUDGMENT - 8

1    changes in address (*see* Dkt. No. 71 ¶ 3), Gustafson-Feis has cited no evidence to support her

2    allegation that she was not provided with Plan documents within 30 days of making a proper

3    request. *See* Dkt. No. 74 at 10.

4          For all of these reasons, the Court finds that there is no genuine issue of material fact as to

5    Protingent's claim for reimbursement and that Protingent is entitled to judgment as a matter of law

6    on this claim.

7    **C.    Gustafson-Feis Has Not Shown That a Continuance is Necessary.**

8          Part of Gustafson-Feis's opposition to the motion for summary judgment is grounded in a

9    request that the case should "continue along the path as set forth in the stipulated joint case

10   management plan" and that she should be permitted to "continue to collect and put evidence in

11   order according to the rules, so that it may be presented at trial." Dkt. No. 74 at 15. But discovery

12   closed in September 2023 (Dkt. No. 67), after multiple previous extensions of the case schedule.

13   *See* Dkt. Nos. 17, 27, 31, 34, 40, 55, 58. The most recent extension was granted with a warning

14   that no further extensions would be permitted. *See* Dkt. No. 67 at 2 n.2.

15         To the extent that Gustafson-Feis's opposition could be construed as a motion for a

16   continuance under Federal Rule of Civil Procedure 56(d), the motion is denied because she has

17   not explained why she has been unable to complete discovery in the expanded time allotted. *See*

18   Dkt. No. 74 ¶ 33 (indicating that Gustafson-Feis has outstanding requests to providers for billing

19   information that she hopes to use to dispute Rawlings' itemized statement). This case was filed in

20   2020 and Gustafson-Feis has not explained why it should be permitted to languish further.

21         Furthermore, the case management plan sets a deadline for filing dispositive motions (such

22   as those requesting summary judgment), and Protingent's motion was filed in accordance with that

23   deadline. *See* Dkt. Nos. 66, 67, 69. Under these circumstances, the Court finds no basis to defer

24   consideration of Protingent's motion.

**D.      Gustafson-Feis's Claims and Counterclaims Fail as a Matter of Law.**

      *1.       Gustafson-Feis's Fraud-Based Claims and Counterclaims Fail Because There Is No Evidence of a False or Deceptive Statement.*

Most of Gustafson-Feis's claims and counterclaims hinge on allegations that Rawlings fraudulently increased the amount of the medical lien and that Rawlings and Protingent have made false statements.  *See* Dkt. No. 9 ¶¶ 117, 145.  It is Gustafson-Feis's position that she is obligated only to reimburse the Plan with the amount listed in the August 2016 letter to Geico, but not the total amount demanded in May 2020.  But, as detailed *supra*, the Geico letter makes clear that the $7,242.38 lien amount was not final and instructed Gustafson-Feis to contact Rawlings for a final lien amount before settling the case.  Dkt. No. 70-3.  These undisputed facts do not support a fraud-based counterclaim because Rawlings explicitly warned that the $7,242.38 lien amount at that time was *not* final, and therefore its subsequent update was not false or deceptive.

Without facts to support the element of falsity or deception essential to the counterclaims for fraud and violation of the CPA, nor any explanation of how Rawlings' attempts to collect on the medical lien violated the FDCPA, Protingent is entitled to summary judgment dismissal of these counterclaims.  *See Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (an unfair or deceptive act or practice is one required element of a CPA claim); *Baertschi v. Jordan*, 413 P.2d 657, 660 (Wash. 1966) (stating that one element of a fraud claim is a false representation); *Langley v. Miller*, No. 4:23-CV-05112-ACE, 2023 WL 8238966, at *2 (E.D. Wash. Nov. 28, 2023) (dismissing an FDCPA claim where plaintiff failed to identify an FDCPA provision that defendant violated).

      *2.       Gustafson-Feis Has Not Alleged Facts to Support her Claim/Counterclaim for Retaliation or Harassment.*

Protingent is entitled to summary judgment dismissal of Gustafson-Feis's claim/counterclaim for retaliation and harassment because none of the facts alleged in the Answer

support any of the elements of those claims. *See Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) (setting out the elements of harassment); *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (setting out the elements of retaliation).

Gustafson-Feis does not mention retaliation or harassment in her opposition to summary judgment, and therefore appears to have abandoned these claims. *See* Dkt. No. 74.

> 3.      *The Counter-Defendants Timely Responded to Requests for Information.*

Plan administrators are required to respond to beneficiaries' requests for certain information within 30 days of the request, or are subject to a fine of $100 for each day of a delayed response, to be paid directly to the beneficiary. *See* 29 U.S.C. § 1132(c). Gustafson-Feis contends that Protingent/Rawlings incurred fines because she did not receive a response within 30 days to a request for documents sent by her former counsel on May 22, 2020. *See* Dkt. No. 9 ¶ 142.

But in acknowledging that the certified mail receipt was not returned, Gustafson-Feis does not dispute that the May 2020 letter was mailed to the wrong address for Rawlings, and that once she emailed on July 21, 2020, Rawlings sent Gustafson-Feis the requested documents, which were received on July 28, 2020. *See* Dkt. No. 70 ¶¶ 13–16; Dkt. No. 74 ¶¶ 91–94. Because Rawlings promptly handled a proper request made on July 21, 2020, Gustafson-Feis has not shown that her receipt of Plan documents was untimely under 29 U.S.C. § 1132(c).

**E.    Plaintiff Is Entitled to Recover Attorney Fees Under the Terms of the Plan, but Further Briefing is Required as to Interest.**

Because Protingent is the prevailing party, it is entitled to an award of reasonable attorney fees. *See* Dkt. 70-1 at 78.

Although Protingent's complaint requests pre- and post-judgment interest (Dkt. No. 1 at 5–6), and its summary judgment motion requests interest on the reimbursement amount of $73,326.54 (*see, e.g.*, Dkt. No. 69 at 21), Protingent has not explained how the interest is to be

calculated or the amount sought.  To the extent that Protingent seeks pre- and/or post-judgment interest, it shall address this issue in its motion for attorney fees, and the Court will enter judgment in this case after the interest issue has been fully briefed.

### III.   CONCLUSION

For all of these reasons, the Court GRANTS Protingent's motion for summary judgment and finds that it is entitled to judgment as a matter of law in the amount of $73,326.54 and attorney fees.  The Court also dismisses all of the claims raised in Gustafson-Feis's Answer/Counterclaim/Third-Party Complaint.

No later than February 20, 2024, Protingent may file a motion for attorney fees and note it for consideration under Local Civil Rule 7(d).

Dated this 18th day of January, 2024.

Kymberly K. Evanson
United States District Judge